Good morning, Your Honors. On behalf of Revolino and Bicek and myself, Anthony Mahoney, I guess I would draw the Court's attention to what I believe is a controlling decision, Mohammed v. Wal-Mart Stores, we've cited in our brief. It's a 2013 decision by this Court. The defense argues in their briefs that Ramirez, the defendant in the criminal matter, admits in three affidavits in the State Court that he knew the gun was in the car. Respectfully, I would draw the Court's attention to the entries in those three affidavits, and they do not indicate that he knew the gun was in the car. The first one is in the Appendix A-608. That one is dated the 12th of December, 2013, and all three of these were submitted before Justice Solomon decided to dismiss the indictment. So in that one, Ramirez states, The next one is in the Appendix A-608. The question, I think, legally, is whether he was traveling at the time. I don't believe so, Judge. I think that, respectfully, as soon as he learned that, he pulled it to the curb, and he took her out and into the Port Authority. Did it happen to be the Port Authority? They were happening to go by, and they were headed somewhere else? Yes. Well, he, no, he wasn't going to the Port Authority, but he pulled over. He happened to be there when he... When she started going crazy and making all the statements, and then including in the statements, I brought my gun with me. on A-304 in the Appendix. It was his affidavit on the 27th of January. Given her erratic behavior as given to show why I was concerned on April 27, 2013, when I reported to the Port Authority police that she had said she had her gun in the car. That's how he learned about it. She had said she had the gun in the car. He had no knowledge of it before, and he's insisted on that from the very beginning. The last affidavit he filed on the 22nd of April, 2014, which was about a week before Judge Solomon came down with his decision. And in there he says, I had no knowledge that Jacqueline Bonstagle had brought the firearm with her to New York City until she made that statement in front of the Port Authority. Even then, I had not seen the firearm. I had no prior knowledge of the presence of the firearm, nor did I ever control or possess it. Further, I was not located in the car, nor anywhere near it, when the firearm was discovered. So I believe those affidavits contradict what they are arguing in their brief. With regard to Safe Harbor, it's important, I think, for the court to view the fact that the defendants never served, and the pretrial in this matter went, I think, from about August or maybe July until the court dismissed it, the complaint, in December 28th. At no time in that period of time... You're talking about the district court here. The district court, yes. I'm sorry. At no time in that period did any of the defendants file a Safe Harbor notice. And I would submit that that sort of implies that they never considered that anything that was alleged in the complaint or anything... Does Safe Harbor apply when the judge is doing it sua sponte rather than by motion? No, Your Honor is correct. What I'm referring to is they had five months or six months to file a Safe Harbor notice on their own and bring a motion until it was dismissed. They never did that. So that would seem to imply, in their mind, they didn't believe anything in here was frivolous or anything of that nature. It's up to the court, isn't it? I mean... Rule 11 specifically gives parties the right to bring a motion. But the district court can also bring an order to show cause sua sponte. That's correct, Your Honor. No question. But what the district court did here was they... The district court brought the sua sponte motion. It dismissed the complaint. Then it brings the sua sponte motion. Can it technically do that? I suppose technically it can do that. But I think there is case law now that seems to indicate that that's not what should be done. What the court did in this case on January the 19th, 2016, was it invited the defendants to make submissions concerning whether Rule 11 sanctions may be imposed. First, the court issued its order to show cause on December 28th, 2015. And in issuing that order, it refers, in general, that my reasons are in the 21-page opinion that she gave for misrepresentations and omissions. Never specified what misrepresentations or what omissions. And there is significant case law that makes that a requirement that that notice be given. Finally, on the 19th of January, after she found that the appellant's response to that, our response, was inadequate, then it stated that the misrepresentation is the misrepresentation with knowing that the gun is in the car and the omission of failing to — I'm sorry, I have a mental lapse. Failing to report on him. Failing to report that he was the one who went into the building and made the phone call. Yes, Your Honor. Making the phone call isn't part of the complaint. It's not. This complaint was — Oh, no. I'm sorry. The allegation in part rested on racial profiling. Is that correct? Yes, Your Honor. So that was a part of the complaint. And the omission that the district court identified, as Judge Sack pointed out, was that it was your client who informed the police of the presence of the gun. So that would, wouldn't you agree with me, tend to negate the allegation of racial profiling? No. If I'm calling attention to myself, then that tends to undermine the racial profiling. He wasn't calling attention to himself. He was notifying them that somebody else who owned the gun, who owned the car, had told him, I have a gun with me in the car, and I don't believe in what's going on in politics and everything else. She ranted on in that regard. So based on that, he took his daughter and got out and went and made the phone call. That's — reporting a crime doesn't make you part of the crime. You're not — But I think the argument is the complaint alleges that Ramirez, quote, was the subject of racial profiling as defendants singled him out simply because he is an Hispanic male. And the omission to say, well, the defendants responded to the scene and to him specifically because he called them to the scene is a fact that you need to know in the context of this complaint for it not to be misleading. Everyone who's a party knew he made the phone call. They had all that information. It was used constantly for the four- or five-month period. If the court was so upset by the way the complaint was drafted, all the court had to do was make that known. I would have taken that out. The firm would have taken it out. We would have left whatever elements remained. We would not have ignored it if we had been notified of it. I'm now — I've been now made fully aware of Rule 11 sanctions. It's only taken about 40 years or 35 to 40 years, but I'm fully aware of it now. If someone had said that you face sanctions, when there was the one conference, not with me, but with my associate, and it's been made part of the record, I think it's S. It's a single binder by the defense. And nowhere in that does the judge in the district court say, why don't you pull this, you know, dismiss this, or anything like that, or indicate in the least that you're facing — if you refuse to do that, you're facing sanctions. Would have been done. Would have been as easy as that. You've served three minutes of rebuttal time. Thank you, Your Honor. Thank you for your argument. May it please the Court. My name is Juan Barragan, and I represent the Port Authority of New York and New Jersey defendants. The district court did not err for imposing sanctions against the plaintiff's counsel, Sua Sponte, for the following reasons. First, the court gave Mr. Mahoney notice and a reasonable opportunity to respond. As you may know, the 21-day safe harbor does not apply when the court imposes sanctions on Sua Sponte and may do so without providing the offending attorney the opportunity to withdraw the statement. In this case, the court did give Mr. Mahoney a reasonable opportunity to respond when they notified him by way of the order to show cause dated December 28, 2015. Also, second, the court gave Mr. Mahoney specific notice of the sanctionable conduct. The December 28, 2015 order to show cause indicated that the sanctions were being imposed due to the misrepresentations and omissions contained in the complaint, which were specifically referenced in the December 28, 2015 opinion and order, which dismissed the case and granted the defendant's summary judgment. Third, the record before the court warranted a finding that Mr. Mahoney acted in bad faith. First, Mr. Mahoney was Ramirez's attorney throughout the criminal case. Therefore, he was fully aware of the facts and circumstances surrounding this incident. Also, the court gave Mr. Mahoney at least three separate opportunities to correct the misrepresentations he and omissions contained in the complaint. First, the court allowed him to do so when the district attorney defendants moved to dismiss. The court gave him the opportunity to amend the complaint. Mr. Mahoney amended the complaint and did not remove any of the misrepresentations or clarified any of the omissions. The court also allowed Mr. Mahoney to do so. At some point, maybe colleagues will do it, but you better focus on what the misrepresentations, you say plural, and omission or omissions are, so that we can focus on those, because I would think that's certainly what I'm interested in. I can't speak for my colleagues. The first misrepresentation and one of the more important ones was that the complaint alleged that Ramirez did not know that there was a firearm in the car and that his arrest was due to racial profiling. Didn't know it at the time? Did not know. Yes. Not that he just had found out about it. I thought that the facts were that he just found out about it and then stopped and went into the room. Is that not right? No. The complaint just says that Ramirez did not know that there was a firearm in the car and asserted that his arrest was due to racial profiling. On the other hand, the affidavits indicate that he knew that there was a gun in the car. One affidavit indicates that he knew what it was driving while he was driving along. Another one indicates that she told him there was a gun in the car. So that's a misrepresentation. But if the question is whether he, if his position was that he never knew about it, that there was a gun in the car, and as soon as he knew there was a gun in the car, he went in and told the police. You're saying that's not what happened? No. The complaint says that he did not know there was a firearm in the car and asserted that his arrest was due to racial profiling. I see. And that's why it's an omission because he omitted to point out that he went into the bus term and picked up a phone and called the police to tell them that there was a gun in the car. Yes. And you're saying that's contrary. That proves that it's not true that he didn't know there was a gun in the car. Exactly. And it also leads to the racial profiling. I've heard it. Okay. Because if he's claiming that he was racially profiled as Hispanic male, but he was not because the reason he was arrested and that there was probable cause for it was because he was the one who reported that there was a gun in the car. So these are all misrepresentations and omissions that led to the imposition of sanctions. But it all has to do with whether he knew there was a gun in the car. The reason I say that is because the evidence you're talking about is consistent, I think, and the omission seemed to me to be consistent with the notion that he was not aware of the gun in the car until he pulled up in front of the bus terminal and ran out. On the other hand, it certainly seems clear that when he got out and went into the bus terminal and made the call, at that point he certainly did know there was a gun in the car. Am I making any sense? You are. Yes. Oh, I knew you'd say that. Yeah, go ahead. Because it's a big difference, at least to me as I look at the facts, as to whether the issue was did he know there was a gun in the car at the time he left the car and made a phone call, or did he not discover that there was a gun in the car until he was in front of the bus terminal, and as soon as he discovered it, he went in? Well, those are all the contradictory statements that we are faced with in the affidavits versus the complaint and then the amended complaint. You're saying they said he didn't know about the – he simply didn't know about the gun. Well, in the affidavits, he says that he knew about it all along. Right. Then in the complaint, he says he did not know about it. And then as soon as he discovered it, he went and reported it. But then he is also claiming that he's a subject of racial profiling. So these are all inconsistent statements that led the Court to the imposition of sanctions to Ospante. I see that I'm out of time, and – Two more people in the batting.  And for those reasons, I respectfully submit that the Court should uphold the imposition of sanctions imposed by the District Court. Good morning. ADA Elizabeth Crasow on behalf of the District Attorney and on behalf of ADA Rachel Earhart. I'm going to just pick up right where my colleague left off, which is the fact that during the criminal case, Your Honor, Mr. Mahoney was the attorney for Mr. Ramirez. And in his capacity as a defense attorney, my office disclosed to him multiple statements that his client made acknowledging his association to the gun. Well, the complaint alleges at no point in his interaction with the police officers was the plaintiff within the vicinity of the aforementioned handgun, nor did he have any knowledge of it being in the automobile while he and J.B. were traveling. Right. Did he make – did he submit an affidavit in the criminal case that contradicts the statement that he had no knowledge of the gun while he was traveling? Yes, Your Honor. Not just is it in the affidavits, it's in other statements that he gave to my office, including in a videotaped interview. Where in the affidavits? Because Mr. Mahoney pointed us to some portions of the affidavit where he subsequently figured out that there was a gun after he was told by his girlfriend. Sure. So the affidavits – the narrative in the affidavits is that while he was driving, I believe it was through the tunnel into New York City, that he learned that there was a gun in the car and that then he made the determination that they were going to drive to the Port Authority and he was going to come up with an excuse to go inside the Port Authority. And so in addition to those affidavits, Your Honor, there's also statements that he made to police that we disclosed in connection with our voluntary disclosure form where he said – But wasn't there also evidence on the other side? You know, the question of whether because there was evidence on one side and on the other side, he might very well have lost. But wasn't there also evidence in an affidavit that he didn't know? His own affidavit of December, whatever the heck it was. No, it wasn't. It's April 23rd. Sorry. Your Honor, I don't know how you can credibly say that you didn't know about a gun that you called the police to report. So if he didn't think that there was a gun in the car, then why did he take the job? No, no, no. That's not what he says. He says, I had no knowledge that the woman had brought the firearm with her to New York City until she made that statement in front of the Port Authority. Right. So but then if you compare that to the complaint, right, that he filed in the district court when he initiated this lawsuit, he says, I had no knowledge of the gun whatsoever. So the complaint is at A62 to 80, and the amended complaint is at A130 to 150. And it's actually the same sequence of paragraphs because he didn't amend it even after I filed a motion to dismiss that contained documents that suggested that it was false. So that's going to be at paragraphs 27 through 32, where he talks about the fact that he didn't have any knowledge of the gun being in the car. That fits in with both the omission and because both have to do with an allegation that he never knew the gun was in the car rather than the allegation that he didn't find out about the gun in the car until they were in front of the Port Authority. Right. I think it's splitting hairs to get to that level. If you file a complaint that says, I had absolutely no knowledge of the gun, that's not consistent with Rule 11 when you, first of all, even agree to... But that's not what this affidavit says. This affidavit says, I had no knowledge that she had brought the firearm with her to New York City until she made the statement in front of the Port Authority. That means that he's saying, yes, I knew about it, but I didn't know about it until I was in front of the bus terminal. That's true, Your Honor. But the problem is, for Rule 11 purposes, that the complaint makes it appear that he had no idea that a gun would even be discovered in the car and that he had no connection to it. And that's plainly not true, not only just on the affidavits, Your Honor, that... Where is there evidence that he knew while they were traveling in the car that there was a gun in the car? If you turn to page 583 of the appendix, which is the People's Voluntary Disclosure Form, which we would have disclosed to Mr. Mahoney at his client's arraignment on his indictment, there's this statement attributed to Mr. Ramirez that said, while driving I did know that the gun was in the car. But even his statement that he learned about it while he was in the course of traveling, which is in the affidavit, is consistent with the fact that he knew about the gun that was in the car. But I think that the bigger problem, Your Honor, is the fact that the complaint makes it appear that the police descended on him for no reason, that it was racial profiling, that they had no basis to approach him, when in reality he's the one that called the police and asked them to respond. And even... You know, even beyond that fact, Your Honor, that that misleading allegation was in the complaint, even after throughout the course of this... Go ahead, Your Honor. What you just said is directed, I think, at the omission and why the omission was important. Because he wasn't arrested or under suspicion because of his race or any such characteristics. He was the one who made the call. That's fine. Then what is the... That's the omission. What is the misrepresentation that was sanctioned? Well, I think it's part of the same picture, Your Honor. So the misrepresentation is I didn't know about the gun. That's just not true. So why would he call police to report the mother of his child and have her arrested? He does say in an affidavit that he did know about the gun, but he didn't say that in the... In the complaint, and that's the exact problem. That's the exact problem. So the affidavits in the criminal case and his statements to my office that were videotaped, his statements that he made to police officers, they all say one thing. And when he filed the civil suit, he made a transparent attempt to disassociate himself from the gun and make it appear that there was some racial animus that even prompted the police to approach him in the first place. I believe my time is up, so unless there's any further questions, I'll take a seat. Thank you. Good morning, Your Honors. May it please the Court. My name is Megan Montcalm, and I represent Appalese, the City of New York, Commissioner Bratton, and the NYPD. My colleagues have addressed the probable cause analysis. I'm happy to answer any additional questions the panel has about that matter, but I do want to focus on two other points that factored into the district court's analysis in sanctioning Mr. Mahoney. The first of those is Mr. Mahoney's lack of good faith in naming the NYPD and Commissioner Bratton as defendants in this lawsuit. Neither the complaint nor the amended complaint included any allegation that either Commissioner Bratton or any NYPD officer had any personal involvement in the events underlying this complaint. Despite that, he continued to include them in his pleadings and opposed their motion to dismiss. The second point I want to emphasize is Mr. Mahoney's lack of familiarity with the statutory notice of claim requirements for filing state law causes of action against the City of New York. Compliance with those, and timely compliance with those, is a conditioned precedent to suit against the City of New York and its agencies. I hear Mr. Mahoney's colleague represented to the court during a conference in October of 2015 that they had certainly complied with those requirements. The court directed him to provide the City with the notice of claim, and when he did so a few days later, it was apparent that the notice of claim was extremely untimely. Not only was it served after the 90-day time period provided for in the statute, but it was served after the statute of limitations had expired on those claims. And the district court at that conference had urged Mr. Mahoney's colleague and his firm to consider whether they should dismiss those state law claims against the City if the notice of claim were not timely. Despite the fact that it was not timely, Mr. Mahoney's firm persisted in pursuing those claims. These circumstances exacerbated the effects of the omissions from the complaint and the false impression that Mr. Mahoney gave about the basis for his client's civil rights claims. I would suggest that even Mr. Mahoney's presentation here today suggests an unwillingness to take responsibility for his own role in this situation as he suggests the district court should have told him that he had an obligation under Rule 11 when as an attorney representing clients in federal court, it's his responsibility to undertake a reasonable inquiry and to put forward only factual assertions that have an evidentiary basis. The City believes in a case like this, sanctions serve an important purpose for deterrence and for these reasons we'd ask this court to affirm the district court's sanction order. Can I ask one of the four of you to tell me, so there's two complaints. I want to be sure I'm looking at the one that's sort of operative with respect to this appeal. And there's one at A-130 called Amended Complaint in Jury Demand. And it's probably dated somewhere. But is that the complaint we should be looking at? Yes, Your Honor. So the original complaint is at A-17 and the amended complaint is at A-130. And for these purposes, the allegations that are at issue are the same in both of those complaints. What's A-62 then? Is that just another? That's another reproduction as an exhibit to the DA's motion papers. And the district court was focused here on paragraphs 26 through 30 or about that range. Those paragraphs are numbered the same in the original complaint and the amended complaint. Thanks very much. Thank you. Essentially, the district court invited the defendants to file motions for sanctions, as may make submissions concerning whether Rule 11 sanctions may be imposed. I would submit that that request to the defendants essentially violates Rule 11 because it allows the defendants to bring That's not why we're here. We're here for the Rule 11 sanctions that were imposed on you and your firm. So stick to that. Well, that's what I'm trying to do, Judge. I'm sorry. The basis for imposing the sanctions, in part, and it's been argued in defendants' briefs, at least one of the briefs, has to do with what they raised after that invitation by the district judge. She gave that invitation. They raised that before her. They've raised it again in their briefs here. And what I'm submitting is that that violates Rule 11 because from where they sit, they have to bring a motion, and Rule 11 has certain requirements for that motion, and the court is essentially giving them a cover to ride on her bootstraps and say, Here, we're bringing it now, even though the case has been dismissed. And the court failed to comply with Rule 11. Well, the court essentially got around, allowed the defendants to get around complying with Rule 11. I'm not saying that a Rule 11 motion, a court doesn't make a Rule 11 motion, but essentially here, the defendants are invited to make a Rule 11 motion. I'll hear it, even though the case has been dismissed back in December. So I would submit that anything they've raised in any of those points aren't eligible on this appeal. The court, even the two points that the court raised, misrepresentation and omission, there is no misrepresentation. I've read excerpts from the three affidavits that he files. One of the things that the representative from the DA's office points us to is a statement made by your client at A583 in which he says, I learned while we were traveling through the tunnel that she had her gun with her. That's not a statement. That's a note that's taken down by one of the police officers in their little book. And this went on for about three and a half hours from the initial, when they stopped the car, when they pulled up beside the automobile, the Toyota. Were you aware of the statement before this litigation? Were you aware that he made that statement, whether it was wrong, right? Everything that's in 582, 583. Mr. Mahoney. Yes, I was aware of that. But it's not a statement in the sense that you're at the police station and they sit you down and they advise you of your rights. He was all upset. And this went on for about three and a half hours. It wasn't until 930 or 10 o'clock that they finally sat down and they filled out a complaint against my client. And they questioned him for three hours, off and on. This police officer comes in, you know, what about this, what about. And yet, when they go to get an indictment, as Justice Solomon points out in his opinion, when they go for the indictment, nobody was called to testify in the grand jury. No police officers. There was nothing. That's why it had to be dismissed. The police officers are making the arrest. They're supposed to be able to present probable cause. They couldn't do that. The DA's office couldn't call a police officer to put together enough for probable cause. So given that, to bring the civil lawsuit, I don't think that that's absurd or anything like that. I mean, the indictments are not thrown out every day of the week. It's unusual, to say the least, that indictments are dismissed on a motion. And in this case, as Justice Solomon wrote on for about two or three pages in his opinion, there was nothing he could find to justify the indictment. To corroborate accomplice testimony. I'm sorry, Your Honor. Corroborate accomplice testimony. Wasn't that the basis for the state court's ruling? Well, to corroborate the accomplice's testimony, yes. But if any police officer had anything, that would be probable cause. So I don't mean to go around in a circle, but you need probable cause. That's like first base. You get to first base, well, then you go to second, third. But they never got to first base. Thank you, Your Honor.